**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ERIC HINES,

                Petitioner,

                v.

ADMINISTRATOR JOHN POWELL, et al.,

                Respondents.

Civil Action No. 19-19252 (KMW)

**OPINION**

**WILLIAMS**, District Judge:

    This matter comes before the Court on Petitioner Eric Hines's Amended Petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254.  (ECF No. 5.)  Following an order to answer, Respondents filed a response to the Petition.  (ECF No. 12.)  Petitioner did not file a reply. For the following reasons, this Court will deny the Amended Petition, and will deny Petitioner a certificate of appealability.

## I.    BACKGROUND

    In his decision denying Petitioner's state post-conviction relief ("PCR") petition, the PCR judge summarized the facts underlying Petitioner's conviction as follows:

> [In the] early morning of March 13, 2009, Haddon Township police responded to a 911 call of a robbery in progress.  The victim reported that she encountered an intruder in her home.

> The intruder . . . struck her and then fled the area.  The police encountered a male on a bicycle carrying a bag a short while later. The male ignored orders from the police to stop and instead fled, ultimately escaping.  A search of the area revealed a bag containing

> items from the victim's home, including her purse.   [A p]olice
> officer recovered a knit hat [the male had been wearing] and a tube
> sock.
>
> Police conducted a further investigation of the victim's
> home.   A search yielded open bottles and cans of alcohol.   Those
> were seized by the police as evidence.   Those items along with the
> hat and tube [sock] were submitted for DNA testing.   Test results
> using the CODIS system revealed that the DNA matched
> [Petitioner] whose DNA had been on file stemming from a prior
> arrest.   [Petitioner], who was incarcerated in the County jail at the
> time, was charged with crimes that ultimately led to the indictment.
>
> . . . .
>
> [Although Petitioner's DNA match to the recovered knit cap
> and beer can were confirmed via a buccal swab taken without a
> warrant, t]he CODIS hit . . . itself was not the product of the taking
> of the exemplar from the [Petitioner] without a Court Order[,] . . .
> the taking of that exemplar resulted from the CODIS hit.

(ECF No. 12-69 at 11, 13.)

Although Petitioner's trial counsel mulled over the filing of a motion to suppress the DNA

evidence given the lack of a warrant to support the taking of the buccal swab, repeated pre-trial

conversations with the trial judge indicated that the trial judge believed that the CODIS hit was

ample evidence to support a probable cause finding.   (*See id.* at 13-15.)   Indeed, the trial judge

directly indicated that even if such a motion were filed, he would consider there to have been no

harm as a motion seeking a warrant to perform a new buccal swab – which undoubtedly would

have had the same outcome – would have been granted.   (*Id.*)   Petitioner's trial attorney therefore

conceded that the evidence resulting from the improper buccal swab was admissible as the

prosecution would inevitably obtain the same evidence by a new buccal swab, flowing from the

probable cause established by the CODIS hit, and thus withdrew a motion to have the evidence suppressed on that basis. (*Id.*)

During trial, Petitioner sought to introduce into evidence a photograph of him taken a few weeks before the night of the burglary as evidence of third-party guilt because the photograph did not match the height, weight, and facial hair description the victim initially gave to police on the night of the burglary. (*See* ECF No. 12-17 at 3.) The trial judge denied this request, finding that the arrangement of Petitioner's hair and facial hair two weeks before the incident was not indicative of his appearance on the night in question, and because Petitioner had already been permitted to place into evidence a redacted record showing that his height and weight did not match the description provided by the victim. (*Id.* at 4.)

## II.   **LEGAL STANDARD**

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A habeas petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846-47 (3d Cir. 2013). Under the statute, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), district courts are required to give great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 772-73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta[,]" of the opinions of the United States Supreme Court. *See Woods v. Donald*, 575 U.S. 312, 316 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.* Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## III.   DISCUSSION

### A.   Petitioner's sufficiency of the evidence claim

In his first claim, Petitioner asserts that the evidence presented at trial was insufficient to support his guilt. When a petitioner presents a claim challenging the sufficiency of the evidence provided at trial, "a reviewing court must ask 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Eley*, 712 F.3d at 847 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). A court sitting in habeas review may therefore overturn a conviction based on insufficient evidence only "if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* (quoting

4

*Jackson*, 443 U.S. at 324). "Under *Jackson*, federal courts must look to state law for the substantive elements of the criminal offense, but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman v. Johnson*, 566 U.S. 650, 655 (2012). Under this "deferential federal standard," juries have "broad discretion in deciding what inferences to draw from the evidence presented at trial" and federal courts must not "unduly impinge[] on the jury's role as factfinder" by engaging in "fine-grained factual parsing." *Id.*

In this matter, the Appellate Division rejected Petitioner's sufficiency of the evidence claims as "the record discloses the proofs amply support the jury's verdict on each of the crimes charge," because "[a]lthough the victim's description of her intruder did not match [Petitioner]'s height and weight, his DNA was found on a knit cap he discarded while attempting to flee from police and on a beer can police took from the victim's home." (ECF No. 12-17 at 3.)  This conclusion is neither contrary to nor an unreasonable application of federal law.  The DNA evidence clearly establishes that Petitioner was both the man who entered the victim's home and consumed the opened beer can while prowling about within, and that he was both the intruder who wore a knit cap and the man who fled police while wearing that same cap while carrying goods stolen from the victim's home.  Coupled with the victim's testimony regarding her having been struck by the intruder, the evidence thus amply supports Petitioner's convictions for robbery, burglary, theft, and resisting arrest.  In light of this evidence, a reasonable juror could easily find Petitioner guilty, rendering his sufficiency challenges meritless.

**B. Petitioner's Third-Party Guilt claim**

In his next claim, Petitioner asserts that he was denied his right to put on a defense when the trial court precluded him from introducing a photograph taken sixteen days before the burglary

to suggest that he was not the intruder and that some other person must have committed the crimes in question. Specifically, he contends that the victim's inaccurate height and weight descriptions, as well as the facial hair Petitioner had in the photo weeks before the night in question indicate that he could not have been the intruder. This, coupled with the trial court's decision to tell the jury that they had to determine Petitioner's guilt based solely on the evidence in the record with the court refusing to answer whether the jury could conclude a second man had been involved prevented him from putting on a defense.

While the Constitution "prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote," states are free to adopt evidentiary rules that "permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes v. South Carolina*, 547 U.S. 319, 326 (2006). The Constitution thus "permits judges to exclude evidence that is repetitive . . . , only marginally relevant[,] or poses an undue risk of harassment, prejudice [or] confusion of the issues." *Id.* at 326-27 (internal quotations omitted). Thus, while an accused person may offer evidence of third party guilt in a criminal trial where it is probative of the state's proofs and not overly prejudicial, such evidence "may be excluded where it does not sufficiently connect [another] person to the crime, as, for example, where the evidence is speculative or remote, or does not tend to prove or disprove a material fact at issue." *Id.* at 327 (quoting 40A Am. Jur. 2d, Homicide § 286, 136-38 (1999)).

The Appellate Division rejected Petitioner's proposed evidence in this matter for just such a reason – the Petitioner's facial hair or lack thereof two weeks or more before the night in question was irrelevant to the state of Petitioner's hair on the night in question, and could at best serve to confuse a jury who had already been told that the victim had overstated Petitioner's height by a

few inches and had provided a description that suggested a person heavier than Petitioner. (ECF No. 12-17 at 4.) This decision was neither contrary to nor an unreasonable application of federal law – the state courts were free to exclude the photograph, which was at best remotely relevant to the issue of whether a third party may have been involved, and that exclusion did not prevent Petitioner from showing that the victim's description suggested someone slightly larger than himself. As noted by the Appellate Division, the exclusion of the photo was at best harmless – the DNA evidence clearly showed Petitioner's involvement in the crime, and nothing other than a mildly inaccurate description by a victim who saw Petitioner only briefly after being awoken in the middle of the night existed in the record to suggest that Petitioner was not the intruder in question. As the decisions of the state courts comport with federal law, this claim does not serve as a basis for habeas relief.

## C. Petitioner's prosecutorial misconduct claim

Petitioner next contends that the state prosecutor committed misconduct during his summation when he argued that the DNA match between Petitioner's buccal swab and both the beer can and knit cap clearly placed Petitioner in the victim's house and showed that he was the source of the recovered DNA, which the prosecutor contended would not have been shown had the sample been contaminated. This argument, however, was made in direct response to Petitioner's arguments and cross-examinations which were designed to suggest that the DNA tests were the result of comingling or contamination and should be rejected as such. The Appellate Division thus rejected this argument concluding that the statements during summation were a direct response to the defense's theory of the case and closing argument, and was thus 'well within the bounds of proper commentary." (ECF No. 12-17 at 5.)

The duty of a prosecutor in a criminal proceeding is to see that justice is done, and as such prosecutors must "refrain from [the use of] improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935); *see also United States v. Bailey*, 840 F.3d 99, 124 (3d Cir. 2016). While a prosecutor "may strike hard blows [during his summation], he is not at liberty to strike foul ones." *Berger*, 295 U.S. at 88; *Bailey*, 840 F.3d at 124. A criminal conviction, however, "is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial." *United States v. Harris*, 471 F.3d 507, 512 (3d Cir. 2006) (quoting *United States v. Young*, 470 U.S. 1, 11 (1985). Prosecutorial misconduct will therefore only warrant habeas relief where it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *see also Copenhefer v. Horn*, 696 F.3d 377, 392 n. 5 (3d Cir. 2012).

In this matter, the prosecutor's challenged comments were a direct response to Petitioner's own arguments and cross-examinations, all of which were designed to undercut the jury's reliance on the ample DNA evidence connecting Petitioner to the crime. As a direct response to the arguments of the defense, the prosecution's arguments in this matter were entirely fair comment. In light of the fact that the comments responded to issues Petitioner's own counsel raised, and because it is clear that the comments did not deny Petitioner a fair trial in light of the strong evidence of Petitioner's guilt, the decision of the Appellate Division to reject Petitioner's claim was neither contrary to nor an unreasonable application of federal law as the comments in question did not "so infect[] the trial with unfairness" as to render the prosecutor's comments a denial of Due Process. This claim thus fails to set forth a valid basis for habeas relief and must also be rejected.

**D.  Petitioner's sentencing claim**

In his next claim, Petitioner contends that his sentence was excessive.  However, because habeas relief is not available for alleged violations of state law, *see Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991), a challenge to the exercise of sentencing discretion by a state court will not serve as a basis for habeas relief absent some separate constitutional violation.  *See, e.g., Yorio v. New Jersey*, No. 10-5335, 2012 WL 3133948 at *3 (D.N.J. July 31, 2012).  A sentence which is within the bounds set by state statute, then, is not subject to a constitutional challenge based solely on the grounds that it is excessive.  *Holloway v. Bush*, No. 18-905, 2019 WL 2323821, at *12-13 (M.D. Pa. Apr. 10, 2019); *see also Townsend v. Burke*, 334 U.S. 736, 741 (1948).  As Petitioner has not shown that his sentence was outside the range provided by state law, has not provided an independent constitutional violation which would permit a challenge to his sentence, and because the Appellate Division found that Petitioner's sentence comported with state law, Petitioner's excessive sentence claim fails to set forth a valid basis for habeas relief.

**E.      Petitioner's Ineffective Assistance Claims**

In his remaining claims, Petitioner contends that he received ineffective assistance of counsel.  The standard applicable to claims of ineffective assistance of counsel is well established:

> [c]laims of ineffective assistance are governed by the two-prong test set forth in the Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668 (1984).  To make out such a claim under *Strickland*, a petitioner must first show that "counsel's performance was deficient.  This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687; *see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007).  To succeed on an ineffective assistance claim, a petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . .

whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299.

In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). A petitioner asserting ineffective assistance must therefore show that counsel's representation "fell below an objective standard of reasonableness" under the circumstances. *Id.* The reasonableness of counsel's representation must be determined based on the particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel. *Id.* In scrutinizing counsel's performance, courts "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Even where a petitioner is able to show that counsel's representation was deficient, he must still affirmatively demonstrate that counsel's deficient performance prejudiced the petitioner's defense. *Id.* at 692-93. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. The petitioner must demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299. Where a "petition contains no factual matter regarding *Strickland's* prejudice prong, and [only provides] . . . unadorned legal conclusion[s] . . . without supporting factual allegations," that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief. *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010). "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

*Judge v. United States*, 119 F. Supp. 3d 270, 280-81 (D.N.J. 2015).

In his first claim, Petitioner contends that trial counsel proved ineffective in failing to press a motion to suppress the DNA evidence on the basis that the buccal swab had been taken without a warrant. The state courts rejected this argument, finding that any impropriety in the taking of

the swab was harmless because the police would have inevitably discovered the DNA evidence via a new buccal swab because the CODIS match, which was not the result of the improper swab, provided ample probable cause to support the taking of a new sample. As it is clear that this conclusion is entirely supported, *see Nix v. Williams*, 467 U.S. 431, 447-48 (1984) (evidence that would have been inevitably discovered regardless of police misconduct admissible at trial), it is also clear that any motion to suppress pursued by counsel on this basis would have been entirely without merit. Counsel therefore was not ineffective in withdrawing a challenge to the DNA evidence on this basis. *See Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000) (counsel cannot be ineffective in failing to raise a meritless argument); *see also United States v. Aldea*, 450 F. App'x 151, 152 (3d Cir. 2011). Petitioner's first ineffective assistance claim therefore provides no basis for habeas relief.

In related claims, Petitioner argues that counsel proved ineffective in failing to secure expert witnesses to challenge the DNA evidence provided at trial. The state courts rejected this claim because Petitioner failed to provide any certification or other document setting forth proposed testimony from an available expert who was willing to testify at trial. (*See* ECF No. 12-43 at 8, 14.) It is axiomatic that a petitioner's "failure to include a sworn statement regarding the nature of [an expert's] proposed testimony is fatal to his making a *prima facie* showing of prejudice" due to the failure to call such an expert at trial. *Tolentino v. United States*, No. 13-4168, 2014 WL 3844807, at *3 (D.N.J. July 31, 2014); *see also Duncan v. Morton*, 256 F.3d 189, 201-02 (3d Cir. 2001). As Petitioner failed to provide an affidavit from a qualified expert who would have been available to testify at trial, he has failed to show prejudice as to counsel's alleged failure to secure an expert witness, and this ground for relief must therefore be rejected.

Petitioner in his next series of claims contends that trial counsel deprived him of effective assistance because counsel failed to show that there was an inadequate chain of custody to support

the State's DNA evidence.  Petitioner also contends that the chain of custody itself was faulty and rife with false signatures, post hoc alterations, and improper handling.  The PCR courts rejected this claim as Petitioner's counsel had extensively cross-examined the state's witnesses on the chain of custody as to the DNA evidence, and as Petitioner's challenge to the chain of custody itself were all either speculative, contradicted by the record, or were based at best on an uncharitable reading of the documents in question.  (*See* ECF No. 12-69 at 15-18, ECF No. 12-43 at 6-9, 11-14.)  As the PCR judge explained,

> . . . defense counsel did not stipulate to the chain of custody.  She cross-examined every witness and there were multiple witnesses presented by the . . . State [including] . . . law enforcement officers plus . . . people from the State lab [such as t]he person who did the DNA analysis and the person who did the DNA extraction.  All of them were extensively cross-examined about chain of custody issues.
>
> And the . . . alleged discrepanc[ies] from the [chain of custody documents] . . . are explainable.  They do not demonstrate opportunities for defense counsel to have undermined the State's evidence on chain of custody because they were consistent with the testimony in the trial.

(ECF No. 12-69 at 17-18.)  The PCR judge further concluded Petitioner's challenge to the chain of custody and contention that some of the DNA evidence against him could have been fabricated "would require a conclusion that about a half a dozen people who testified in this case about chain of custody and about conduct of the DNA extraction and DNA testing testified falsely," and that the record contained "no basis to make that kind of a conclusion at all."  (*Id.* at 23.)  The Appellate Division affirmed on the same bases.  (ECF No. 12-43 at 11-14.)

Having reviewed the evidence and the challenged chain of custody documents, this Court finds that the conclusion of the PCR and Appellate courts are neither contrary to nor an unreasonable application of federal law, nor do they contain an unreasonable determination of the facts.  Petitioner has failed to show that counsel was deficient in light of counsel's extensive cross-

examination on the chain of custody issues, and has in any event failed to show that there was any actual issue with chain of custody that would have rendered the evidence against him inadmissible – he has proffered only his own speculation and conclusory allegations to support his contention that there are any actual, rather than perceived, issues with the chain of custody, and each of those allegations were reviewed and rejected by the state courts at length. Given counsel's extensive cross-examination on these issues, and the lack of any clear evidence showing a real issue with the chain of custody of the evidence provided at trial, Petitioner has failed to show that he was prejudiced by counsel's actions or that any issue with the chain of custody was anything other than harmless as none of the discrepancies had a substantial and injurious effect upon the outcome of his trial. *See, e.g., Fry v. Pliler*, 551 U.S. 112, 115-16 (2007) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993), for the proposition that even constitutional claims will be harmless on collateral review unless the petitioner shows they had a substantial and injurious effect upon the jury's verdict). Petitioner's chain of custody related ineffective assistance claims and his claims challenging the legitimacy of the state's chain of custody are therefore without merit as habeas claims, and provide no basis for habeas relief.

In a connected argument, Petitioner contends that there were 21 additional items submitted for DNA testing which either were not fully tested, or the results of tests on those items were not fully provided to Petitioner prior to trial. Petitioner argues that one specific item – a pair of the victim's underwear which he asserts were found to contain sperm fragments – could show that someone other than him was in the victim's house on the night in question. The PCR court rejected this claim, finding that "any testing of any of the clothing of the victim . . . would have been irrelevant in this case." (ECF No. 12-69 at 20.) To the extent that this claim was included in

Petitioner's challenges to the DNA custody evidence on appeal,[1] the Appellate Division rejected the claim without further comment. Petitioner's only stated interest in these additional items is his contention that sperm fractions apparently found in the victim's underwear could support a theory that "a rape had taken place" and that he had not been involved. That contention, and any DNA found on the victim's underwear, are entirely irrelevant to the questions presented at his trial – whether he burglarized the victim's home on the night in question. The victim did not claim that any rape had taken place, or that the intruder in her home in any way touched the clothing in question. Any DNA found on the clothing was thus not relevant to the question of whether Petitioner entered and burgled the victim's home. Because the clothing, and any DNA which may have been present in sperm fractions in that clothing was not relevant to Petitioner's guilt, Petitioner lack of access to DNA testing of the fractions had no capacity to affect the outcome of his trial and was thus entirely harmless. *Brecht*, 507 U.S. at 631. This claim therefore serves as no basis for habeas relief.

---

[1] This claim was discussed and rejected by the PCR trial level court as part of a lengthy discussion of Petitioner's numerous challenges to the chain of custody evidence. The Appellate Division affirmed the rejection of the chain of custody evidence during the PCR appeal, but it is not clear whether this specific issue was properly raised or considered by them in so doing. To the extent that it was not raised to their attention, this claim would be unexhausted. Respondents did not separately address this claim in their briefing, but they do contend that two further claims which Petitioner raises – his claim that a witness lied about his having stolen a video camera and his ineffective assistance of PCR counsel claims – are equally unexhausted because they were not properly raised. While the failure to exhaust all claims would preclude a federal court from granting habeas relief, pursuant to 28 U.S.C. § 2254(b)(2), a habeas petition may be denied on the merits notwithstanding the petitioner's failure to properly exhaust his claims. As Petitioner's ineffective assistance of PCR counsel claim is clearly not a proper basis for habeas relief as discussed below, and as the alleged false testimony related ineffective assistance claim and Petitioner's additional DNA testing claims are without merit for the reasons discussed in this opinion, this Court denies these and all of Petitioner's claims on the merits and therefore need not address the exhaustion issue.

Petitioner next argues that counsel failed him by not challenging testimony from Officer Power that a video camera was recovered alongside the victim's stolen goods, which Petitioner contends was false. The PCR court rejected this argument as Petitioner had provided nothing other than his own assertions to support the conclusion that the testimony from the officer was false and because the testimony was before the jury who alone were empowered to "decide whether it was credible or not." (ECF No. 12-69 at 20.) That decision was neither contrary to nor an unreasonable application of federal law. Petitioner has not provided any evidence other than his own bald assertion to show that the testimony was, in fact, false, and he has not shown that he was prejudiced by the allegedly false testimony as it remains clear from the record that Petitioner stole from the victim more than sufficient items to support his convictions even without the disputed video camera. As the PCR courts' rejection of this claim was neither contrary to nor an unreasonable application of federal law, this claim thus serves as no basis for habeas relief.

Petitioner also contends that his appellate counsel on direct appeal was ineffective in failing to raise several of the claims discussed above, including his chain of custody and DNA motion claims. While appellate counsel's decisions are subject to the same ineffective assistance standard applicable to trial counsel claims, *see Smith v. Robbins*, 528 U.S. 259, 285 (2000), "it is a well established principle that counsel decides which issues to pursue on appeal," *Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996) (citing *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)), and appellate counsel need not raise every nonfrivolous claim a defendant wishes to pursue. *Jones v. Barnes*, 463 U.S. at 751. As the chief component of effective appellate advocacy is the winnowing out of weaker claims in favor of those with a greater chance of success, *id.* at 751-52; *Smith v. Murray*, 477 U.S. 527, 536 (1986), the Supreme Court has held that "[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome." *See Robbins*, 528 U.S. at 288 (quoting *Gray v.*

*Greer*, 800 F.2d 644, 646 (7th Cir. 1986)).  As all of the claims Petitioner wishes counsel had raised on direct appeal are without merit for the reasons discussed above, Petitioner cannot show that counsel was ineffective for failing to raise those claims on appeal.  Petitioner's ineffective assistance of appellate counsel claims are thus no basis for habeas relief.

In his final set of ineffective assistance claims, Petitioner contends that his PCR counsel provided ineffective assistance of counsel during state post-conviction proceedings.  Pursuant to 28 U.S.C. § 2254(i), however, the "ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a [habeas] proceeding."  As such, Petitioner's claim is not a proper basis for habeas relief.

In his final claim, Petitioner contends that the PCR court erred when it failed to grant him a hearing before denying his petition.  "[A]lleged errors in collateral proceedings . . . are not a proper basis for habeas relief from the [Petitioner's] original conviction," and at most affect the deference due a state court conviction.  *Lambert v. Blackwell*, 387 F.3d 210, 247 (3d Cir. 2004).  Any error in the state court's refusal to grant Petitioner a hearing during collateral review hearings therefore provides no basis for habeas relief in this matter.  As this and all of Petitioner's claims are either not proper bases for habeas relief or are without merit, Petitioner's habeas petition is denied.

## IV.   **CERTIFICATE OF APPEALABILITY**

Pursuant to 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right."  "[A petitioner] satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude [that] the issues presented here are

adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because Petitioner's habeas claims are all clearly without merit for the reasons set forth above, he has failed to make a substantial showing of a denial of a constitutional right, and his amended petition is not adequate to receive encouragement to proceed further. This Court therefore denies Petitioner a certificate of appealability.

## V.   CONCLUSION

In conclusion, Petitioner's amended habeas petition (ECF No. 5) is **DENIED**, and Petitioner is **DENIED** a certificate of appealability. An appropriate order follows.

Hon. Karen M. Williams,
United States District Judge

17